**No. 24-6043**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

––––––––––––––––

DAN McCALEB,

*Plaintiff-Appellant,*

v.

MICHELLE LONG,

*Defendant-Appellee.*

––––––––––––––––

On Appeal from the Judgment of the United States
District Court for the Middle District of Tennessee
(No. 3:22-cv-00439)

## APPELLEE'S RESPONSE BRIEF

Jonathan Skrmetti
  *Attorney General & Reporter*

J. Matthew Rice
  *Solicitor General*

Andrew C. Coulam
  *Deputy Attorney General*

Robert W. Wilson
  *Senior Assistant Attorney General*

Office of Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-1868
Andrew.Coulam@ag.tn.gov
Robert.Wilson@ag.tn.gov

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

JURISDICTIONAL STATEMENT ...................................................................1

ISSUES PRESENTED FOR REVIEW ..................................................................2

INTRODUCTION ...............................................................................................3

STATEMENT OF THE CASE.............................................................................4

    A.      Tennessee Advisory Commission on the Rules of
            Practice and Procedure ...............................................................4

    B.      McCaleb's Lawsuit....................................................................7

SUMMARY OF THE ARGUMENT ...................................................................8

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ....................................................................................................10

    I.     McCaleb Has No First Amendment Right of Access to Advisory
         Commission Meetings under *Houchins v. KQED*....................................10

         A.     *Houchins* governs McCaleb's right-of-access claim. ...................11

         B.     *Richmond Newspapers* does not govern McCaleb's
              right-of-access claim. ....................................................................13

    II.    Alternatively, McCaleb Has No First Amendment Right of Access to
         Advisory Commission Meetings under *Richmond Newspapers*..............22

         A.     McCaleb cannot satisfy the "experience" prong............................22

         B.     McCaleb cannot satisfy the "logic" prong. ...................................25

CONCLUSION...................................................................................................29

CERTIFICATE OF COMPLIANCE .........................................................................30

CERTIFICATE OF SERVICE ................................................................................31

DESIGNATION OF RELEVANT DOCUMENTS ................................................32

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*ACLU v. Mississippi*,
  911 F.2d 1066 (5th Cir. 1990) ...............................................................20

*Branzburg v. Hayes*,
  408 U.S. 665 (1972)........................................................... 3, 11, 12, 17

*Cal-Almond, Inc. v. U.S. Dep't of Agric.*,
  960 F.2d 105 (9th Cir. 1992) ..............................................................20

*Cap. Cities Media, Inc. v. Chester*,
  797 F.2d 1164 (3d Cir. 1986) ..............................................................24

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
  331 F.3d 918 (D.C. Cir. 2003)........................................................ 15, 20

*Cyr v. Addison Rutland Supervisory Union*,
  60 F. Supp. 3d 536 (D. Vt. 2014) ........................................................23

*Detroit Free Press v. Ashcroft*,
  303 F.3d 681 (6th Cir. 2012) ...................................................... *passim*

*El Dia, Inc. v. Hernandez Colon*,
  963 F.2d 488 (1st Cir. 1992)...............................................................20

*El Vocero de Puerto Rico v. Puerto Rico*,
  508 U.S. 147 (1993)...................................................................... 23, 24

*Flynt v. Rumsfeld*,
  355 F.3d 697 (D.C. Cir. 2004)..............................................................20

*Fusaro v. Cogan*,
  930 F.3d 242 (4th Cir. 2019) ...............................................................20

*Globe Newspaper Co. v. Superior Court*,
  457 U.S. 596 (1982)............................................................................14

*Haines v. Fed. Motor Carrier Safety Admin.*,
  814 F.3d 417 (6th Cir. 2016)) ................................................................22

*Hils v. Davis*,
  52 F.4th 997 (6th Cir. 2022) ........................................................ *passim*

*Houchins v. KQED, Inc.*,
  438 U.S. 1 (1978) ......................................................................... *passim*

*In re Search of Fair Fin.*,
  692 F.3d 424 (6th Cir. 2012) ................................................................25

*Keller v. Genovese*,
  65 F.4th 785 (6th Cir. 2023) ..........................................................4, 25

*Kentucky v. Yellen*,
  54 F.4th 325 (6th Cir. 2022) ................................................................10

*Kerr for Kerr v. Comm'r of Soc. Sec.*,
  874 F.3d 926 (6th Cir. 2017) ................................................................22

*Lanphere & Urbaniak v. Colorado*,
  21 F.3d 1508 (10th Cir. 1994) ..............................................................20

*Lichtenstein v. Hargett*,
  83 F.4th 575 (6th Cir. 2023) ................................................................11

*Los Angeles Police Dep't v. United Reporting Pub. Corp.*,
  528 U.S. 32 (1999) ................................................................................16

*Manogg v. Stickle*,
  No. 98-3394, 1999 WL 266348 (6th Cir. Apr. 23, 1999) .....................16

*McBurney v. Young*,
  569 U.S. 22 (2013) ................................................................................16

*Morrison v. Lipscomb*,
  877 F.2d 463 (6th Cir. 1989) ........................................................ 15, 19

*N. Jersey Media Grp., Inc. v. Ashcroft*,
    308 F.3d 198 (3d Cir. 2002) ...............................................................21

*Phillips v. DeWine*,
    841 F.3d 405 (6th Cir. 2016) ...................................................... *passim*

*Press-Enterprise Co. v. Superior Court*,
    478 U.S. 1 (1986) ........................................................................ *passim*

*Putnam Pit, Inc. v. City of Cookeville, Tenn.*,
    221 F.3d 834 (6th Cir. 2000) ...............................................................16

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) ................................................................... *passim*

*Rivera-Puig v. Garcia-Rosario*,
    983 F.2d 311 (1992) ............................................................................23

*S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*,
    499 F.3d 553 (6th Cir. 2007) ...............................................................14

*Spurlock v. FBI*,
    69 F.3d 1010 (9th Cir. 1995) ...............................................................21

*State v. Mallard*,
    40 S.W.3d 473 (Tenn. 2001) ..................................................................4

*Travis v. Reno*,
    163 F.3d 1000 (7th Cir. 1998) .............................................................20

*Virginia v. Black*,
    538 U.S. 343 (2003) ............................................................................11

*Wellons v. Comm'r, Ga. Dep't of Corr.*,
    754 F.3d 1266 (11th Cir. 2014) ...........................................................21

*Whiteland Woods, L.P. v. Twp. of W. Whiteland*,
    193 F.3d 177 (3d Cir. 1999) ...............................................................21

*Zemel v. Rusk*,
    381 U.S. 1 (1965)................................................................................ 3, 11, 12, 17

**STATUTES**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1343 ....................................................................................1

42 U.S.C. § 1983 ....................................................................................1

Tenn. Code Ann. § 16-3-401 ................................................................4

Tenn. Code Ann. § 16-3-601 .............................................................5, 25

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ............................................................................11

**OTHER AUTHORITIES**

6 Cir. R. 25(f) .....................................................................................31

6 Cir. R. 32(b) ....................................................................................30

Advisory Commission on the Rules of Practice & Procedure, *available at*
    https://www.tncourts.gov/boards-commissions/boards-commissions/advisory-
    commission-rules-practice-procedure.......................................................5

Fed. R. App. P. 25(c)-(d) ......................................................................31

Fed. R. App. P. 32(a) ...........................................................................30

Fed. R. App. P. 32(f) ............................................................................30

Fed. R. App. P. 34(a) ......................................................................... viii

Fed. R. Civ. P. 56(a).............................................................................10

Mattew L. Schafer, *Does Houchins v. KQED, Inc. Matter?*,
    70 Buff L. Rev. 1331 (2022)...................................................................20

Zachary D. Clopton, *Making State Civil Procedure*,
    104 Cornell L. Rev. 1 (2018)................................................................24

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Michelle Long submits that oral argument is unnecessary. Plaintiff-Appellant questions whether the Supreme Court's decision in *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), governs his First Amendment right-of-access claim, but this Court has authoritatively concluded that *Houchins* controls—as the district court concluded. *See* Fed. R. App. P. 34(a)(2)(B). Further, the facts and legal arguments are adequately presented in the briefs and record; this Court's decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Dan McCaleb, filed suit against Defendant-Appellee, Michelle Long, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 against her in her official capacity as the Director of the Tennessee Administrative Office of the Courts. (Compl., R.1, at 3-4; Am. Compl., R.19, at 134.)[1] The district court's subject-matter jurisdiction rested on 28 U.S.C. §§ 1331 and 1343.

On November 20, 2024, the district court granted the Director's motion for summary judgment, denied McCaleb's motion for summary judgment (Mem. Op., R.88, at 2989; Order, R.89, at 2990), and entered judgment in the Director's favor (Entry of J., R.90, at 2991). That same day, McCaleb filed a notice of appeal. (Notice of Appeal, R.91, at 2992.) This Court has jurisdiction to review the district court's "final decisions." 28 U.S.C. § 1291.

---

[1] All record citations refer to the "PageID" numbers in the ECF file stamps for the district court's electronic docket, No. 3:22-cv-00439 (M.D. Tenn.).

1

## ISSUES PRESENTED FOR REVIEW

1.   Whether the district court properly concluded, applying *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), that McCaleb has no First Amendment right of access to meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure.

2.   Alternatively, whether the district-court judgment may be affirmed on the basis that even applying *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), McCaleb has no First Amendment right of access to meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure.

## INTRODUCTION

While the First Amendment protects abridgment of oral or written expression, the "right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Put differently, the United States Constitution is "neither a freedom of Information Act nor an Official Secrets Act." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14 (1978). A government, for example, can permissibly exclude citizens from attending conferences among judges and meetings of legislators without offending the Constitution. *Branzburg v. Hayes*, 408 U.S. 665, 684-85 (1972); *Zemel*, 381 U.S. at 16-17. In all, the Constitution does not mandate "a right of access to government information or sources of information" within its control. *Houchins*, 438 U.S. at 15.

Applying *Houchins* and this Court's decisions, the district court correctly granted the Director summary judgment regarding McCaleb's claim that he has a First Amendment right to access meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure. McCaleb's right to attend those meetings extends only as far as the government has opened its doors to the public and press. The State of Tennessee has not opened the Advisory Commission's meetings, which are closed to both the public and press. Accordingly, McCaleb had no First Amendment right to attend the Advisory Commission's meetings.

The two-part test from *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), is a narrow exception to the *Houchins* rule and is inapplicable here.  The *Richmond Newspapers* test only applies only to adjudicatory or quasi-adjudicatory proceedings—a function the Advisory Commission does not perform.  But even if, *arguendo*, the Court were to apply the *Richmond Newspapers* test, the result would not change because McCaleb cannot meet either, much less both, of the test's two prongs.  Consequently, the district court properly granted summary judgment on behalf of the Director.

## STATEMENT OF THE CASE

### A.   Tennessee Advisory Commission on the Rules of Practice and Procedure

"The Tennessee Supreme Court 'has the inherent power to promulgate rules governing the practice and procedure of' Tennessee state courts." *Keller v. Genovese*, 65 F.4th 785, 789 (6th Cir. 2023) (quoting *State v. Mallard*, 40 S.W.3d 473, 480-81 (Tenn. 2001) and citing Tenn. Code Ann. § 16-3-401).  To help in that task, the Tennessee General Assembly created the Advisory Commission on the Rules of Practice and Procedure, "whose duty shall be to advise the supreme court from time

to time respecting the rules of practice and procedure." Tenn. Code Ann. § 16-3-601(a).[2]

The purpose of the Advisory Commission is to propose rule changes to the Tennessee Supreme Court. Def.'s SOMF, R.73, at 2645; Pl.'s Resp. to SOMF, R.84, at 2949-50. Proposals can come from several sources: an Advisory Commission member; a legislator; a judge; or an attorney. Def.'s SOMF, R.73, at 2646; Pl.'s Resp. to SOMF, R.84, at 2950.[3] After considering a proposal, the Advisory Commission votes on the proposed recommendation to be made to the Tennessee Supreme Court. Def.'s SOMF, R.73, at 2646; Pl.'s Resp. to SOMF, R.84, at 2950-51. If approved, a liaison from the Tennessee Administrative Office of the Court (AOC) sends the recommendation to the Tennessee Supreme Court. Def.'s SOMF, R.73, at 2646; Pl.'s Resp. to SOMF, R.84, at 2950-51.

The Tennessee Supreme Court then decides whether to move forward on a proposed amendment or new rule. The Tennessee Supreme Court is under no

---

[2] *See also* Advisory Commission on the Rules of Practice & Procedure, *available at* https://www.tncourts.gov/boards-commissions/boards-commissions/advisory-commission-rules-practice-procedure (last accessed on April 14, 2025).

[3] In the district court, McCaleb disputed the Director's inclusion of "member of the public" as a source. Pl.'s Resp. to SOMF, R.84, at 2950 (citing Dep. of Michelle Consiglio-Young, R.74-3, at 2753). But McCaleb's own record citation shows that the Advisory Commission previously "had requests from members of the public before for discussion of items." Dep. of Michelle Consiglio-Young, R.74-3, at 2752-53.

5

obligation to accept the recommendation of the Advisory Commission—it can ig-
nore or summarily reject it.  Dep. of Thomas Lang Wiseman, R.72-2, at 2076-77,
2098.  Nor does the Tennessee Supreme Court need to consult the Advisory Com-
mission before revising a rule.  Def.'s SOMF, R.73, at 2646; Pl.'s Resp. to SOMF,
R.84, at 2951.  Once it decides on a proposed amendment or new rule, the Tennessee
Supreme Court will publicize the proposal for public comment for at least sixty days.
Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, 2951.  After the com-
ment period ends, the Tennessee Supreme Court will consider the comments before
filing an order of proposed rules.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF,
R.84, at 2951-52.  That order is transmitted to the Tennessee General Assembly.
Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2951-52.  Before the
rule or amendment can go into effect, the General Assembly must affirmatively ap-
prove it.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2952.

The AOC provides administrative support to the Advisory Commission.
Def.'s Resp. to SOMF, R.81, at 2845.  And as its Director, Michelle Long oversees
the AOC.  *Id.* at 2844-45.  Before McCaleb brought this action, Advisory Commis-
sion meetings were closed to the public—since at least 2018.[4]   Advisory

---

[4] McCaleb averred in the district court that Commission meetings had been open to
the public before 2018.  Pl.'s SOMF, R.75, at 2778; Def.'s Resp. to SOMF, R.81, at
2845-46.  The Director, however, maintained that the meetings were closed to the
public even before 2018.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84,

Commission meetings were closed because discussions among Commission members can involve sensitive information, and confidential meetings allow members a certain level of candor that would be diminished if open to the public. Def.'s SOMF, R.73, at 2648; Pl.'s Resp. to SOMF, R.84, at 2953.

### B.    McCaleb's Lawsuit

McCaleb, as Executive Editor for The Center Square, filed suit against the Director in June 2022, claiming that the closed Advisory Commission meetings violated his First Amendment right of access to the meetings under the Supreme Court's decision in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), and its progeny. Am. Compl., R.19, at 131-32, 144-46. McCaleb sought and obtained a preliminary injunction requiring the Director to open future meetings of the Advisory Commission to the public. Order and Prelim. Inj., R.40, at 1102-04. After discovery, the parties cross-moved for summary judgment. Def.'s Mot. for Sum. J., R.71, at 1929-30; Pl.'s Mot. for Sum. J., R.74, at 2651.

The district court granted the Director's motion for summary judgment, vacated the preliminary injunction, and denied McCaleb's motion. Order, R.89, at 2990. Judgment was entered in the Director's favor. Entry of J., R.90, at 2991. The district court concluded that McCaleb lacked "a First Amendment right to access

---

at 2952-53. The district court did not need to resolve this factual dispute. Mem. Op., R. 88, at 2988.

Advisory Commission meetings." Mem. Op., R.88, at 2982. The court determined, based on Sixth Circuit precedent, that the Supreme Court's decision in *Houchins*—not *Richmond Newspapers*—governed McCaleb's claim. *Id.* at 2984-85. *Houchins* held that "there is generally no First Amendment right to access information that the government has decided not to make public." *Id.* at 2988. That "general rule" from *Houchins* "must apply" "unless an exception applies." *Id.* at 2985. And while recognizing that *Richmond Newspapers* served as an "exception" to the "general rule," the district court explained that the exception did not apply here because: (1) the Sixth Circuit had "clearly rejected" McCaleb's arguments in a similar case; and (2) the *Richmond Newspapers* line of cases applied to "adversarial, quasi-judicial, or otherwise adjudicative proceedings"—not to the rulemaking proceedings of the Advisory Commission. *Id.* at 2985-86.

McCaleb now appeals to this Court.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's grant of summary judgment to the Director. Under *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), McCaleb lacks any First Amendment right of access to the meetings of the Tennessee Advisory Commission on the Rules of Practice and Procedure. As the district court properly concluded under *Houchins*, a First Amendment right to access Advisory Commission meetings would extend only as far as the State of Tennessee has opened its doors to

the public.  And the State has not opened its doors to Advisory Commission meetings.

While a modest exception to *Houchins*'s general rule exists, that exception applies only to adjudicatory or quasi-adjudicatory proceedings.  In a line of cases starting with *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Supreme Court has concluded that the public has a First Amendment right to attend criminal trials and pre-trial hearings under an "experience and logic" test.  And while this Court has extended that right to civil trials, documents filed in certain criminal proceedings, and administrative deportation proceedings, it has applied *Richmond Newspapers*'s "experience and logic" test only to proceedings that are adjudicatory or quasi-adjudicatory in nature.  Advisory Commission meetings, as rulemaking proceedings, fall outside the *Richmond Newspapers* exception.

Alternatively, even if *Richmond Newspapers* applied, McCaleb would still have no First Amendment right of access to meetings of the Advisory Commission because he cannot satisfy either prong of the *Richmond Newspapers* test.  McCaleb cannot show an unbroken history throughout the United States of public access to court-rule advisory commissions meetings.  Nor can he show that public access to Advisory Commission meetings would play a significant, positive role in its functions.  The Advisory Commission merely proposes rule recommendations to the Tennessee Supreme Court, which can reject or revise any recommendation.  And

9

before a proposed rule is approved by the Tennessee General Assembly, it is subject to multiple periods of public comment regardless of any public access to the Advisory Commission meetings.

## STANDARD OF REVIEW

A district court's decision to grant summary judgment is reviewed de novo. *Kentucky v. Yellen*, 54 F.4th 325, 335 (6th Cir. 2022). In drawing all reasonable inferences in the non-movant's favor, the party seeking summary judgment must demonstrate "that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The same standards apply to each party's motion when considering cross-motions for summary judgment. *Yellen*, 54 F.4th at 335.

## ARGUMENT

**I.    McCaleb Has No First Amendment Right of Access to Advisory Commission Meetings under *Houchins v. KQED*.**

The district court properly concluded that *Houchins*—not *Richmond Newspapers*—governs McCaleb's First Amendment right-of-access claim to Advisory Commission meetings. Mem. Op., R.88, at 2986. It also properly concluded, applying *Houchins*, that McCaleb has no First Amendment right of access to Advisory Commission meetings. *Id.* at 2987-89.

## A. *Houchins* governs McCaleb's right-of-access claim.

The First Amendment, as applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I; *see also Virginia v. Black*, 538 U.S. 343, 358 (2003) (recognizing that the First Amendment is "applicable to the States"). By its terms, the First Amendment "bars a state from 'abridging' oral expression (the freedom of 'speech') or written expression (the freedom of the 'press')." *Lichtenstein v. Hargett*, 83 F.4th 575, 582 (6th Cir. 2023). From these provisions, the United States Supreme Court has held that "news gathering" qualifies for First Amendment protection by allowing persons "to seek news from any source by means within the law." *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972).

But the "right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Nor does the "right to gather information" "require others to give it away or require governments to open up all ongoing proceedings to the public." *Hils v. Davis*, 52 F.4th 997, 1002 (6th Cir. 2022). "Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978) (plurality); *see also id.* at 16 ("The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do

they guarantee the press any basic right of access superior to that of the public generally.") (Stewart, J., concurring).  The public and press can be permissibly excluded, for example, from accessing grand-jury proceedings, attending the United States Supreme Court's conferences, attending the meetings of official bodies gathered in executive session, attending meetings of private organizations, accessing the scenes of a crime or disaster, travelling to foreign countries to gather news, and illegally entering the White House.  *Branzburg*, 408 U.S. at 684-85; *Zemel*, 381 U.S. at 16-17.

In evaluating a First Amendment claim seeking access to information held by the government, *Houchins* "sets the baseline principle":  The First Amendment does not mandate "'a right of access to government information or sources of information within the government's control.'"  *Phillips v. DeWine*, 841 F.3d 405, 418 (6th Cir. 2016) (quoting *Houchins*, 438 U.S. at 14-15).  Since the "Constitution itself is neither a Freedom of Information Act nor an Official Secrets Act," *Houchins*, 438 U.S. at 14, "the First Amendment right to gather information from the government usually extends as far as the government has opened its doors to the public and press," *Hils*, 52 F.4th at 1003; *see id.* at 1002 (recognizing "a general First Amendment right to gather information in public settings").

Applying *Houchins*, the district court correctly concluded that McCaleb lacks a First Amendment right to access Advisory Commission meetings.  Under *Houchins*, any right of access McCaleb has depends only on whether the State of

Tennessee "has opened its doors to the public and press" and allowed attendance at these meetings. *Hils*, 52 F.4th at 1003. The State has not: it is undisputed that Advisory Commission meetings are closed to the public—at least after 2018. Mem. Op., R.88, at 2988; Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2952-53. Thus, the First Amendment does not "mandate[]" that McCaleb have "a right of access" to the meetings "until the political branches decree otherwise, as they are free to do." *Houchins*, 438 U.S. at 15-16. In short, since the State of Tennessee has not opened the Advisory Commission's "doors to the public and press," McCaleb has no First Amendment right to attend them. *See Hils*, 52 F.4th at 1003.

### B. *Richmond Newspapers* does not govern McCaleb's right-of-access claim.

McCaleb insists that district court erred in applying *Houchins* and that the "experience and logic" test from *Richmond Newspapers* and its progeny applies to his right-of-access claim. Br. Appellant, 13-18. But as this Court has previously concluded, while *Richmond Newspapers* constitutes part of a "modest exception" to *Houchins*'s baseline rule, that exception applies only in "limited settings" that are not implicated here—namely, settings involving adjudicatory or quasi-adjudicatory proceedings. *See Hils*, 52 F.3d at 1002-03; *Phillips*, 841 F.3d at 418.

Beginning with *Richmond Newspapers*, the Supreme Court "recognized a right of access to certain criminal proceedings and the documents filed in those proceedings." *Phillips*, 841 F.3d at 418. And in "cases dealing with the claim of a First

13

Amendment right of access to criminal proceedings," the Court's decisions have considered: (1) "whether the place and process have historically been open to the press and general public"; and (2) whether "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8 (1986). And this Court has limited the application of that right, or applied *Richmond Newspapers*'s framework, to proceedings that are adjudicatory or quasi-adjudicatory in nature—civil trials, plea agreements, university disciplinary proceedings, documents relating to the issuance and execution of a search warrant, and deportation proceedings. *Phillips*, 841 F.3d at 418 (citing, *inter alia*, *Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2012)).

As this Court stated in *Hils, Richmond Newspapers*'s "modest exception" to *Houchins* exists in "discrete" and "limited" settings when the government excludes the public "from a space historically open to them, and that space has 'play[ed] a particularly significant role in the functioning of the *judicial process* and the government as a whole.'" *Hils*, 52 F.4th at 1002-03 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 605 (1982)) (emphasis added). Indeed, time and again, this Court has reiterated that the *Richmond Newspapers* framework is "inapplicable" in right-of-access cases "outside of the judicial-proceeding context." *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 560 n.2 (6th Cir. 2007); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 935

14

(D.C. Cir. 2003) (stating that the Supreme Court has not "applied the *Richmond Newspapers* test outside the context of criminal judicial proceedings or the transcripts of such proceedings").

Advisory Commission meetings are not adjudicative or quasi-adjudicative proceedings, as the district court determined, so the *Richmond Newspapers* test does not apply here. Mem. Op., R. 88, at 2986, 2988. The purpose of the Advisory Commission is to make recommendations on court rules to the Tennessee Supreme Court. Def.'s SOMF, R.73, at 2645; Pl.'s Resp. to SOMF, R.84, at 2949-50; *cf. Morrison v. Lipscomb*, 877 F.2d 463, 466 (6th Cir. 1989) (distinguishing the exercise of "rule making" authority from an "adjudication between parties"). Applying *Richmond Newspapers* here would "disregard the general applicability of *Houchins* and represent a significant—and unwarranted—expansion of the right of access under the First Amendment as developed by the Supreme Court and" this Court's "prior decisions." *Phillips*, 841 F.3d at 419-20.

McCaleb claims that "the *Detroit Free Press* opinion . . . stated that *Richmond Newspapers* provides a test of 'general applicability.'" Br. Appellant, 24 (quoting *Detroit Free Press,* 303 F.3d at 694, 699); *see id.* at 18-20. That "general applicability" language, however, derived from *Detroit Free Press*'s questioning the "vitality" of the *Houchins* standard "at least with respect to cases such as the one presently before [it]"—namely, cases involving a deportation proceeding, which the Court

determined to be "an adversarial, adjudicative process." 303 F.3d at 695-96; *see*

*Phillips*, 841 F.3d at 418.

"Since *Detroit Free Press*, this [C]ourt has treated *Houchins* as good law—
which, of course, it is, having never been overruled by the Supreme Court." *Phillips*,
841 F.3d at 418 (citations omitted). Indeed, three years before *Detroit Free Press*
and nineteen years after *Richmond Newspapers*, the Supreme Court relied on
*Houchins* to hold that "California could decide not to give out arrestee information
at all without violating the First Amendment." *Los Angeles Police Dep't v. United
Reporting Pub. Corp.*, 528 U.S. 32, 40 (1999).[5] This Court, too, applied *Houchins*
post-*Richmond Newspapers* to find that there was no First Amendment right of ac-
cess in non-adjudicatory settings. *See Putnam Pit, Inc. v. City of Cookeville, Tenn.*,
221 F.3d 834, 840 (6th Cir. 2000) (citing *Houchins* to conclude that the First Amend-
ment "does not provide blanket access to information within the government's con-
trol"); *Manogg v. Stickle*, No. 98-3394, 1999 WL 266348, at *1 (6th Cir. Apr. 23,
1999) (concluding that *Houchins* did not grant plaintiff access to board-member dis-
cussions in a township board meeting).

McCaleb contends that *Houchins* is distinguishable when applied to "govern-
ment proceedings" because, unlike in *Detroit Free Press*, the plaintiffs in *Houchins*

---

[5] In 2013, the Supreme Court also cited *Houchins* to hold that "there is no constitu-
tional right to obtain all the information provided by FOIA laws." *McBurney v.
Young*, 569 U.S. 221, 232 (2013).

brought their claims under the "Press Clause" and claimed a "special privilege of access" not available to the public.  Br. Appellant, 18-20.  But as the district court observed, that contention mimics the dissent in *Phillips*, "[a]nd the majority in *Phillips* clearly rejected this argument."  Mem. Op, R. 88, at 2986.

McCaleb similarly argues that *Richmond Newspapers* is the proper test "because [he] seeks access to a government proceeding, . . . not government information unrelated to any proceeding."  Br. Appellant, 24.  But his proposed distinction is immaterial, for two reasons.

*First*, this Court has already effectively rejected such line-drawing; it held in *Hils* that the First Amendment does not "require governments to open up all ongoing *proceedings* to the public."  *Hils*, 52 F.4th at 1002 (emphasis added).

*Second*, McCaleb's proposed distinction finds no support in Supreme Court precedent, which establishes that the public has no First Amendment right of access to various *proceedings*—i.e., "official governmental meetings," "the White House," "grand jury investigations," or "Supreme Court conferences."  *Id.* at 1003 (citing *Branzburg*, 408 U.S. at 684-85, and *Zemel*, 381 U.S. at 17).  Indeed, *Houchins*'s baseline principle is not limited to government information—it establishes that the First Amendment does not mandate a right of access "to government information *or sources of information* within the government's control."  438 U.S. at 15 (emphasis added).

17

Plaintiff misconstrues *Phillips* insofar as he asserts that "the plaintiffs in that case had no First Amendment right of access to the information they sought because it was 'neither information of the type filed in a government proceeding nor its functional equivalent.'"  Br. Appellant, 22 (quoting *Phillips*, 841 F.3d at 419).  The Court made this particular statement only after *assuming*, for purposes of analysis, that the relevant "government proceeding"—an execution—was open to the public, i.e., that it would fall within the *Richmond Newspapers* exception.  *See Phillips*, 841 F.3d at 419 (restating the proposition that the right of access to a governmental proceeding recognized in *Richmond Newspapers* includes a related right to access documents filed in those proceedings, but "does not extend to every piece of information that conceivably relates to a governmental proceeding, *even if the governmental proceeding itself open to the public*") (emphasis added); *see also id.* (noting that this Court has "neither adopted nor rejected" the position that the public has a right of access to executions under *Richmond Newspapers* but that the Court "need not resolve that question today").  Because the information the plaintiffs sought in that case was "neither information of the type filed in [such] a government proceeding nor its functional equivalent," "*Houchins*'s general rule applie[d]."  *Id.*

McCaleb says that *Phillips* "did not overrule, and could not have overruled," *Detroit Free Press*.  Br. Appellant, 23.  But *Phillips* did not purport to overrule *Detroit Free Press*.  *Phillips* merely identified the limits of the holding in *Detroit Free*

*Press.  See Phillips*, 841 F.3d at 418.  And the district court concluded (1) that *Detroit Free Press* had distinguished cases applying *Houchins* because they "did not pertain to adversarial, quasi-judicial, or otherwise adjudicative proceedings," and (2) that Advisory Commission meetings were "distinguishable" from deportation proceedings.  Mem. Op., R.88, at 2986-87.

McCaleb's *amici curiae* maintain that *Richmond Newspapers* "provides the rule of general applicability"; that *Houchins* is an exception to *Richmond Newspapers*; and that the application of *Houchins* is justified only to "promote safety," "protect reasonable assumptions of privacy," or "mitigate security concerns"—and even then only to deny access to "records or information rather than judicial proceedings." Br. Amici Curiae, 14-15.  But these assertions defy this Court's precedents.  As discussed, *Houchins* sets the "baseline rule," *Phillips*, 841 F.3d at 418, and the *Richmond Newspapers* test serves as a "modest exception" in "discrete settings not shown here," *Hils,* 52 F.4th at 1003.  Furthermore, and in any event, the meetings of the Advisory Commission are not "judicial proceedings."  *See Morrison*, 877 F.2d at 466.  And closed Advisory Commission meetings do "protect reasonable assumptions of privacy,"—they allow for a level of candor among Commission members to discuss sensitive information.  Def.'s SOMF, R.73, at 2648; Pl.'s Resp. to SOMF, R.84, at 2953.

19

Contrary to McCaleb's suggestion (Br. Appellant, 19-20), out-of-circuit prec-edent accords with this Court's well-established rule. Sister circuits throughout the country have adhered to *Houchins*'s general rule. *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 494-95 & n.8 (1st Cir. 1992); *Fusaro v. Cogan*, 930 F.3d 242, 249-50 (4th Cir. 2019); *ACLU v. Mississippi*, 911 F.2d 1066, 1071-72 (5th Cir. 1990); *Travis v. Reno*, 163 F.3d 1000, 1007 (7th Cir. 1998); *Lanphere & Urbaniak v. Colorado*, 21 F.3d 1508, 1511-12 (10th Cir. 1994); *Flynt v. Rumsfeld*, 355 F.3d 697, 704 (D.C. Cir. 2004). And, in accord with *Phillips*, they have generally limited *Richmond Newspapers* to adjudicatory proceedings. *Ctr. for Nat'l Sec. Studies,* 331 F.3d at 935; *Travis*, 163 F.3d at 1007; *Lanphere & Urbaniak*, 21 F.3d at 1512; *ACLU*, 911 F.2d at 1071-72.

Any tension between the circuits in labeling *Houchins* or *Richmond Newspa-pers* as the "general rule" is exaggerated. The district court, citing the same law review article McCaleb relies on in his brief (Br. Appellant, 16), noted that only three circuits have held that *Richmond Newspapers* supplies the general rule. Mem. Op., R.88, at 2983 (citing Mattew L. Schafer, *Does Houchins v. KQED, Inc. Mat-ter?*, 70 Buff L. Rev. 1331, 1420-33 (2022)). But even purportedly adverse circuits do not provide solid support for McCaleb's position or have backed away from it. For example, the Ninth Circuit decision in *Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 960 F.2d 105 (9th Cir. 1992), did not rule on the "constitutional right of access"

question. *See Spurlock v. FBI*, 69 F.3d 1010, 1017 (9th Cir. 1995). And while the Third Circuit in *Whiteland Woods, L.P. v. Twp. of W. Whiteland* stated "that [the plaintiff] had a constitutional right of access to the Planning Commission meeting," 193 F.3d 177, 180-81 (3d Cir. 1999), just three years later, it disavowed that "potentially misleading language" as "dicta" because the Planning Commission "never actually denied [the plaintiff] the *access* guaranteed by state law," *N. Jersey Media Grp., Inc. v. Ashcroft*, 308 F.3d 198, 214 (3d Cir. 2002). And this Court concluded that the Eleventh Circuit only "nominally applied" the *Richmond Newspapers* test to non-adjudicatory proceedings to address the question "as framed by the plaintiffs." *Phillips*, 841 F.3d at 418 (citing *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1266 (11th Cir. 2014)). Nothing in those decisions should cast doubt on this Court's conclusion that *Houchins* provides the "baseline principle" for First Amendment access claims. *Id.*

The bottom line: *Phillips* held that *Houchins* sets the general rule for non-adjudicatory or quasi-adjudicatory proceedings. The Advisory Commission is a statutory body tasked with providing rule recommendations to the Tennessee Supreme Court, not with conducting adjudicatory proceedings. Thus, *Houchins* governs McCaleb's claim, and under *Houchins*, McCaleb does not have a First Amendment right to attend the meetings.

## II.    Alternatively, McCaleb Has No First Amendment Right of Access to Advisory Commission Meetings under *Richmond Newspapers*.

Even if *Richmond Newspapers* governed McCaleb's right-of-access claim, he would still have no First Amendment right of access to Advisory Commission meetings, because he cannot satisfy either prong of that two-part test.  Therefore, if this Court should conclude that *Richmond Newspapers*—and not *Houchins*—applies, it should affirm the judgment of the district court on this alternative basis.[6]  *See Phillips*, 841 F.3d at 414 (stating that this Court may affirm the judgment below "'on any ground supported by the record'" (quoting *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 423 (6th Cir. 2016))); *see also Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 933 (6th Cir. 2017) (same).

### A.    McCaleb cannot satisfy the "experience" prong.

The "experience" prong of the *Richmond Newspapers* test asks "whether the place and process have historically been open to the press and general public." *Press-Enterprise*, 478 U.S. at 8.  McCaleb asserts that Tennessee Advisory Commission meetings were "open to the public until 2018" and that the "substantially identical analogue" of the federal Judicial Conference Committee on Rules of Practice and Procedure have opened their meetings to the public since 1988.  Br.

---

[6] Because the district court concluded that McCaleb has no "First Amendment right to access the meetings" under *Houchins*, it declined to analyze the claim under the *Richmond Newspapers* framework.  Mem. Op., R.88, at 2989 n.11.

Appellant, 25-29. Even accepting McCaleb's incorrect assertion that Advisory Commission meetings were open before 2018, *see* Def.'s SOMF, R.73, at 2647, he cannot satisfy the "experience" prong.

The experience test "does not look to the particular practice of any one jurisdiction"; it looks "'to the experience in that type or kind of hearing *throughout the United States.*'" *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 150 (1993) (quoting *Rivera-Puig v. Garcia-Rosario*, 983 F.2d 311, 323 (1992)) (original emphasis removed and emphasis added). For example, in finding this prong satisfied in *Press-Enterprise*, the Supreme Court concluded that "the near uniform practice of state and federal courts" was to "conduct preliminary hearings in open court." 478 U.S. at 10; *see also Richmond Newspapers*, 448 U.S. at 564-69 (tracing public access to criminal trials to a point "beyond reliable historical records").

McCaleb did not—and cannot—make that showing as to Advisory Commission meetings—the record does not demonstrate a "near uniform practice" among the States to open rules advisory commission meetings. *See Press-Enterprise*, 478 U.S. at 10. When the First Amendment was drafted, the public had "no common law right to attend government meetings." *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 545-46 (D. Vt. 2014); *see also id.* (noting that "the tradition in England was to hold legislative debate in secret and to prohibit publication of legislative proceedings" (quotation omitted)); *cf. Cap. Cities Media, Inc. v. Chester*,

23

797 F.2d 1164, 1171 (3d Cir. 1986) (holding that "decisions as to how much governmental information must be disclosed in order to make democracy work historically have been regarded as political decisions to be made by the people and their elected representatives").  Further, and as recently as 2018, multiple states did not open their rules-advisory-commission meetings to the public.  Mem. Supporting Def.'s Mot. for Sum. J., R.72, at 1943 (citing Zachary D. Clopton, *Making State Civil Procedure*, 104 Cornell L. Rev. 1, 35, 64 (2018)).  The upshot is that State sovereigns have made different policy decisions about whether to open advisory commission meetings to the public.

Nor does the "substantially identical [federal] analogue" help McCaleb here. While Congress opened the meetings to the federal rules advisory committee by statute in 1988, the committee "worked out of the public eye" for its "first fifty years of federal rulemaking."  Mem. Supporting Def.'s Mot. for Sum. J., R.72, at 1944 (collecting articles and internal quotations omitted).  Not only does the single "analogue" McCaleb identifies have its own checkered past regarding open and closed meetings, but his reliance on the federal government's policies to dictate what the State of Tennessee's should be is "fraught with federalism peril."  *Id.* at 1944-45.

Since neither the United States nor the States have an unbroken history of open advisory commission meetings, McCaleb cannot meet his burden under the experience prong.  *See El Vocero*, 508 U.S. at 150.  His failure to show "a historical

24

tradition of accessibility" to rules advisory commission meetings "alone requires a rejection" of his claim. *In re Search of Fair Fin.*, 692 F.3d 424, 431 (6th Cir. 2012).

**B.    McCaleb cannot satisfy the "logic" prong.**

And McCaleb cannot show that he satisfies the "logic" prong of the R*ichmond Newspapers* test either—i.e., he cannot show that public access "plays a significant positive role in the functioning of the" Advisory Commission meetings. *See Press-Enterprise*, 478 U.S. at 8-9. McCaleb claims that access to Advisory Commission meetings "serves as a check on the actions of the state judiciary," "builds public confidence in the judicial system," and encourages the Commission to "promulgate better court rules and practices." Br. Appellant, 29-31. Not only does McCaleb fail to support those conclusory statements with any record evidence, but the undisputed facts in the record refute them.

The Advisory Commission is a statutory body tasked with proposing court rule changes to the Tennessee Supreme Court. Def.'s SOMF, R.73, at 2645; Pl.'s Resp. to SOMF, R.84, at 2949-50; *see* Tenn. Code Ann. § 16-3-601(a); *Keller*, 65 F.4th at 789. But even if the Advisory Commission recommends a rule or an amendment to a rule, the Tennessee Supreme Court can decide not to move forward on the rule or revise it without consulting the Commission. Def.'s SOMF, R.73, at 2646; Pl.'s Resp. to SOMF, R.84, at 2950-51. So even if the public had access to attend Advisory Commission meetings, that attendance would not affect whether the

Tennessee Supreme Court decides to move forward on a rule recommendation, even if the public helped "promulgate" a "better" proposal.  Br. Appellant, 29.  McCaleb fails to explain how public attendance would serve a "significant positive role" in the Advisory Commission's functions, let alone "build public confidence" in Tennessee's judiciary. *See Press-Enterprise*, 478 U.S. at 10.  Indeed, the record demonstrates that confidential Advisory Commission meetings promote discussions involving sensitive information and allow for a level of candor among members that public access would diminish.  Def.'s SOMF, R.73, at 2648; Pl.'s Resp. to SOMF, R.84, at 2953.

Whatever positive role public attendance at Commission meetings might have, it fades in later stages of the court-rulemaking process, which specifically allows for public participation and input.  Once the Tennessee Supreme Court decides on a proposed rule, the proposal is open for public comment.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2951.  That comment period happens regardless of whether the public can attend Advisory Commission meetings.  After the comment period ends, the Tennessee Supreme Court reviews the comments before deciding whether to proceed with the proposal and before submitting an order of proposed rules to the Tennessee General Assembly.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2951-52.  Thus, the public is affirmatively allowed to participate in the rulemaking process.

As an added layer of public responsiveness, the Tennessee General Assembly—the representatives of the people of the State of Tennessee—must affirmatively approve the rule proposal before it goes into effect.  Def.'s SOMF, R.73, at 2647; Pl.'s Resp. to SOMF, R.84, at 2952.  And members of the public, of course, are free to reach out to their legislators to influence such a vote, as is the case in votes generally before the Tennessee General Assembly.

In all, Tennessee's court-rulemaking process allows the public to provide comments on rule proposals at multiple stages in the process—regardless of whether the public can attend Advisory Commission meetings.  McCaleb cannot demonstrate a connection between Advisory Commission meetings, the Commission's rule recommendations, and the "build[ing of] public confidence in" Tennessee's "judicial system."  Br. Appellant, 31.

Similar arguments by McCaleb's *amici* also fail.  They claim, for instance, that there would be significant "therapeutic value" in having the Advisory Commission meetings open to the public.  Br. Amici Curiae, 24.  But the *amici* fail to explain why this is so, especially when the public can address the Tennessee Supreme Court directly during the comment period or their elected legislators during the voting process.  Amici also posit that public participation in the Advisory Commission meetings would enhance the performance of the Commission members and that there are no potential harms in opening the meetings.  Br. Amici Curiae, 24-25.  But no

27

support lies for the first suggestion, and the undisputed record refutes the second—the record shows that opening the meetings *does* harm the process and puts a chilling effect on the members who might otherwise wish to discuss sensitive information with candor.  Def.'s SOMF, R.73, at 2648; Pl.'s Resp. to SOMF, R.84, at 2953.

## CONCLUSION

The Court should affirm the judgment of the district court.

Dated: April 14, 2025          Respectfully submitted,

Jonathan Skrmetti
  *Attorney General & Reporter*

J. Matthew Rice
  *Solicitor General*


s/Andrew C. Coulam
ANDREW C. COULAM
  *Deputy Attorney General*

Public Interest Division
P.O. Box 20207
Nashville, Tennessee 37202
615-741-1868
andrew.coulam@ag.tn.gov
B.P.R. No. 30731

s/Robert W. Wilson
Robert W. Wilson
  *Senior Assistant Attorney General*

Office of Tennessee Attorney General
40 South Main Street, Suite 1040
Memphis, Tennessee 38103
(901) 543-9031
robert.wilson@ag.tn.gov

*Counsel for Defendant-Appellee Michelle Long*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,133 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced type-face using Times New Roman 14-point font in Microsoft Word.

s/Robert W. Wilson
Robert W. Wilson
*Senior Assistant Attorney General*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. App. P. 25(c)-(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on April 14, 2025. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

s/Robert W. Wilson
Robert W. Wilson
*Senior Assistant Attorney General*

31

## DESIGNATION OF RELEVANT DOCUMENTS

The following record documents are relevant to this appeal:

| Document | ECF | Pages |
|---|---|---|
| Complaint for Declaratory and Injunctive Relief (Compl.) | 1 | 3-4 |
| First Amended Complaint for Declaratory and Injunctive Relief (Am. Compl.) | 19 | 131-32, 134, 144-46 |
| Order and Preliminary Injunction (Order and Prelim. Inj.) | 40 | 1102-04 |
| Defendant's Motion for Summary Judgment (Def.'s Mot. for Sum. J.) | 71 | 1929-30 |
| Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Mem. Supporting Def.'s Mot. for Sum. J.) | 72 | 1943-45 |
| Exhibit 2 (Dep. of Thomas Lang Wiseman) | 72-2 | 2076-77, 2098 |
| Defendant's Statement of Undisputed Material Facts (Def.'s SOMF) | 73 | 2645-48 |
| Plaintiff's Motion for Summary Judgment (Pl.'s Mot. for Sum. J.) | 74 | 2651 |
| Exhibit 3 (Dep. of Michelle Consiglio-Young) | 74-3 | 2752-53 |
| Rule 56.01 Statement in Support of Plaintiff's Motion for Summary Judgment (Pl.'s SOMF) | 75 | 2778 |
| Defendant's Responses to Plaintiff's Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment (Def.'s Resp. to SOMF) | 81 | 2844-46 |
| Rule 56.01 Statement in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Pl.'s Resp. to SOMF) | 84 | 2949-53 |
| Memorandum Opinion (Mem. Op.) | 88 | 2982-89 |
| Order (Order) | 89 | 2990 |
| Entry of Judgment (Entry of J.) | 90 | 2991 |
| Notice of Appeal (Notice of Appeal) | 91 | 2992 |