No. 24-6043

**United States Court of Appeals**
**for the Sixth Circuit**

DAN McCALEB,

*Plaintiff-Appellant*,

v.

MICHELLE LONG, in her official capacity
as Director of the Tennessee
Administrative Office of the Courts,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middle District of Tennessee
No. 3:22-cv-00439 - Hon. Eli Richardson

# APPELLANT'S REPLY BRIEF

Reilly Stephens
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Telephone: (512) 481-4400
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Appellant Dan McCaleb*

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. The *Richmond Newspapers* test applies to Plaintiff's First Amendment claim seeking access to meetings of Tennessee's Judicial Advisory Commission. .......... 2

II. Under the *Richmond Newspapers* "experience and logic" test, Plaintiff has a First Amendment right to access meetings of Tennessee's Judicial Advisory Commission. .......... 3

CONCLUSION .......... 9

CERTIFICATE OF COMPLIANCE .......... 10

CERTIFICATE OF SERVICE .......... 11

# TABLE OF AUTHORITIES

## Cases

*Detroit Free Press v. Ashcroft,*
303 F.3d 681 (6th Cir. 2002).......................................... 3, 5, 7, 8

*Houchins v. KQED, Inc.,*
438 U.S. 1 (1978) .......................................................... 2, 3

*Phillips v. DeWine,*
841 F.3d 405 (6th Cir. 2016)............................................. 2, 3

*Press- Enterprise Co. v. Superior Court,*
478 U.S. 1 (1986) ............................................................ 8

*Richmond Newspapers v. Va.,*
448 U.S. 555 (1980)......................................................... 7, 9

## INTRODUCTION

Plaintiff Dan McCaleb submits this Reply in support of his right of access to traditionally public government proceedings about which the public has a fundamental interest in being informed about.

Appellee falls back on the general principle that government need not open all proceedings to the public. But McCaleb's claim has never been for the general right of press access which Appellee objects to. Rather, he has as free speech claim to access meetings that, until very recently, had always been open to the public. Appellee's reliance on cases discussing the rights of *press* is therefore unwarranted, and the government's rescinding of previously freely granted access when its politically inconvenient is a horse of a different color: that allows the government to pick and choose the information available to the public for their own ends. *Richmond Newspapers* provides that, where proceedings have been previously open to the public, the decision to close those proceedings must survive First Amendment scrutiny, and there is no showing here of any disruption or other intervening justification that would rationalize Appellee's exclusion of McCaleb.

This court should reverse the decision below and find McCaleb's

exclusion from erstwhile public meetings violates his rights under the First Amendment.

## ARGUMENT

### I. The *Richmond Newspapers* test applies to Plaintiff's First Amendment claim seeking access to meetings of Tennessee's Judicial Advisory Commission.

Appellee selectively quotes *Phillips v. DeWine* for the proposition that "*Houchins* 'sets the baseline principle'" for First Amendment access to government information." Response at 12, quoting 841 F.3d 405, 418 (6th Cir. 2016). First, as Appellant has consistently reiterated, *Houchins v. KQED, Inc.* concerns "whether the news media have a constitutional right of access . . . over and above that of other persons," which is not the argument Appellant has ever made in this case. 438 U.S. 1, 3 (1978). Furthermore, *Phillips* went on to say that *Richmond Newspapers* is "[a]n exception to *Houchins*'s general rule," that "could be used to determine whether a First Amendment right of access exists in a wide variety of other contexts." 841 F.3d at 418. (quote and citation omitted). *Phillips* also acknowledged *Detroit Free Press v. Ashcroft*, which, *Phillips* noted, "hedged on *Houchins,* finding that it may still be good law but that *it did not apply to 'quasi-judicial government*

*administrative proceeding[s].'" Id.,* quoting 303 F.3d 681, 696 (6th Cir. 2002) (emphasis added) (alteration in original). And as Appellant has already pointed out, *Detroit Free Press* rejected the government's view that "*Houchins* is the applicable standard for reviewing First Amendment claims of access to administrative proceedings." 303 F.3d 682, 694.

Appellee argues that the Commission meetings are not adjudicative or quasi-adjudicative proceedings, because all the Commission does is make recommendations on court rules. Response at 15. That is not relevant to the question of which case controls. *Houchins* is about the press clause, 438 U.S. at 12, "a First Amendment clause distinct from the speech clause." *Detroit Free Press,* 303 F.3d at 694. McCaleb is not claiming "a special privilege of access" based on his status as a member of the press, and thus "there is no basis to argue that the [*Richmond Newspapers*] test itself does not apply." *Id.* at 694, 696.

## II. Under the *Richmond Newspapers* "experience and logic" test, Plaintiff has a First Amendment right to access meetings of Tennessee's Judicial Advisory Commission.

The first prong of the *Richmond Newspapers* test is whether the proceeding at issue has been historically open to the public and media.

It has. Appellee pleads otherwise first because she alleges that the meetings were not open before 2018 (Response at 32) – but her citation is to a disputed fact, *see* R. 84 at 2952. Indeed, Appellee's cited allegation is merely that "Advisory Commission members understand their meetings to be closed to the public." R. 73 at 2647. Of course, the statement "I understand the sky to be blue" does not mean that the sky is blue; nor does it mean that the sky was blue yesterday.

In actual fact, Gino Bulso testified that he was "not sure" whether the meetings were open (R. 83-1 at 27); Michelle Consliglio-Young testified that "there were open meetings" (R. 74-3 at 24); and Appellee testified that "at one point [the meetings] were open and at one point they were closed" (R. 74-2 at 106). This does not comport with Appellee's false statement that she "maintained that the meetings were closed to the public even before 2018." Response at 6 n.4.

Next Appellee argues that the experience test must examine the practice of equivalent bodies throughout the United States. Response at 32. The total universe of Appellee's evidence on access to state court-rule advisory committees is a 2018 law review article that specifically lists eleven states as having rules advisory commission meetings that

are not open to the public. R. 72 at 1943. Appellee also alleged that 35 states have court-rule advisory commissions. *Id.* 11 is less than half of 35. Appellee's own evidence appears to demonstrate that the majority of states with advisory committees open meetings of those committees to the public. Therefore, even assuming that Appellee's reliance on the federal advisory committee is misplaced, the "experience" prong is satisfied.

In his opening brief, Appellant observed that "a brief historical tradition might be sufficient to establish a First Amendment right of access where the beneficial effects of access to that process are overwhelming and uncontradicted." *Detroit Free Press*, 303 F.3d at 701. With that in mind, Appellee's reliance on the fact that the federal rules advisory committee worked out of the public eye for fifty years (Response at 24) fails. After all, the progress of rights in this country has been, we hope, forward, not to see-saw back and forth between being freely granted and jealously husbanded; the ratchet should usually turn one way. Women did not gain the right to vote until the 19th Amendment was ratified in 1920; would Appellee argue that the historical tradition of the United States is to deny women the right to

vote?

As for "logic" prong, Appellee offers no evidence that the function of these meetings would be undermined by public access, or that members might speak with less candor than they otherwise would have. All Appellee has is one disputed "fact" that "[d]iscussions between Advisory Commission members" – and note that Appellee is unwilling to write that as "discussions *during Advisory Commission meetings*" – "*can* involve sensitive information." Def.'s SOMF, R. 73 at 2648 (emphasis added). But as Appellant observed, and as Appellee has not refuted, the June and December 2023 Advisory Commission meetings were livestreamed to the public, and those videos "depict discussions between members do not involve sensitive information," and "further depict members' candor enhanced by opening meetings to the public." Pl.'s Resp. to SOMF, R. 84 at 2953. If, indeed, there was such a risk of the disclosure of sensitive information that might lead to a lack of candor – and Appellee has completely failed to provide any evidence that that is or even could be the case – then that could be weighed against Appellant's evidence. But all Appellee has is a self-serving conclusory statement that "the record shows that opening the meetings *does* harm

the process." Response at 28.

The open meetings were held on June 9 and December 8 2023. Appellee's motion for summary judgment was filed on December 15; her response to Appellant's motion for summary judgment was filed on January 5, 2024; her reply in support of her summary judgment motion was filed on January 25. At no point in any of those briefs did she say which specific topics the Advisory Commission members felt they could not discuss with full candor at those meetings.

McCaleb, on the other hand, has demonstrated that opening the meetings is beneficial. Appellant pointed out that public access serves as a check on the actions of the state judiciary (and the commission that advises it) by assuring citizens that proceedings are conducted fairly and properly. *See Richmond Newspapers v. Va.*, 448 U.S. 555, 569 (1980). Appellant also pointed out that public access ensures that the government is less likely to make mistakes, and helps keep the public fully informed as to what the government is doing: "[d]irect knowledge of how their government is operating enhances the public's ability to affirm or protest government's efforts." *Detroit Free Press*, 303 F.3d at 705. By contrast, "[w]hen government selectively chooses what

information it allows the public to see, it can become a powerful tool for deception." *Id.*

Public and press access are effectively the only means by which the public may know that proceedings are conducted without bias or other impropriety. Suppose that a new rule is proposed. Who proposed it? Why? What permutations of the rule were discussed before the public notice-and-comment period that Appellee seeks to limit the public to? (Response at 26). Appellee's argument is essentially that the public doesn't need to know what goes on behind the kitchen's closed doors because they get one opportunity to taste the finished product before it's served. Try telling that to, for example, a public health inspector.

Appellee also tries to argue that Appellant and his *amici* can't explain why public participation in the Advisory Commission meetings would enhance the performance of Commission members. Response at 27-28. But that answer has been covered in the case law. "[M]any governmental processes operate best under public scrutiny." *Press-Enterprise Co. v. Superior Court,* 478 U.S. 1, 8 (1986). "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."

*Richmond Newspapers,* 448 U.S. at 572.

Under the *Richmond Newspapers* test, the First Amendment requires Defendant Long to restore public access to meetings of Tennessee's Judicial Advisory Commission.

## CONCLUSION

This Court should reverse the district court's order granting Defendants' motion for summary judgment and denying McCaleb's motion for summary judgment, and it should remand this case with instructions to enter a permanent injunction ordering that Advisory Commission meetings be open to the public.

Dated: May 19, 2025

Respectfully submitted,

/s/ Reilly Stephens
Reilly Stephens
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Telephone: (512) 481-4400
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Appellant Dan McCaleb*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 6 Cir. R. 32(b) because it contains 1,674 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: May 19, 2025

Respectfully submitted,

/s/ Reilly Stephens

Reilly Stephens
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Telephone: (512) 481-4400
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Appellant Dan McCaleb*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2025, the foregoing Principal Brief was filed through the Court's Electronic Filing System, which will send notice to all counsel appearing in this matter.

/s/ Reilly Stephens
Reilly Stephens
James McQuaid
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Telephone: (512) 481-4400
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Appellant Dan McCaleb*